## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JEFFREY S. FURLOW, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:11CV862 |
| | ) | |
| PATRICK R. DONAHOE, | ) | |
| POSTMASTER GENERAL, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendant's motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Docket Entry 11.) Plaintiff Jeffrey Furlow opposes the motion. (Docket Entry 19.) For the following reasons, it is recommended that the Court grant Defendant's motion for summary judgment.

### I. PROCEDURAL BACKGROUND

On October 14, 2011, Plaintiff filed this action against Defendant, Patrick Donahoe in his capacity as Postmaster General of the United States ("Postmaster" or "USPS") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended ("Title VII"). (Docket Entry 1.) On September 14, 2012, Defendant Postmaster filed the instant motion for summary judgment.

### II. FACTUAL BACKGROUND

On a motion for summary judgment, this court views the evidence in the light most favorable to Plaintiff, the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994).

Plaintiff Jeffrey Furlow, a white male, was employed as a letter carrier at the Chapel Hill Post Office during all times relevant to this action. (Declaration of Jeffrey Furlow (hereinafter "Pl.'s Decl.") ¶ 1, Docket Entry 17.) Plaintiff had nearly 24 years of service with the USPS. (Pl.'s Decl. ¶ 16.). Plaintiff held a variety of positions with the USPS prior to his transfer to North Carolina in 2003. (Dep. of Jeffrey Furlow (hereinafter "Pl.'s Dep.") 9-10, Docket Entry 12-1.) Plaintiff worked as a letter carrier in Louisburg, North Carolina for nine months before transferring to the Chapel Hill post office in March 2004, where he has worked ever since as a letter carrier. (*Id.*) Currently, Plaintiff works as a Level 6 letter carrier technician. (*Id.* at 10-11.) The Postmaster at the Chapel Hill Post Office at all times relevant to Plaintiff's claim was Toni Gorman (hereinafter "Postmaster Gorman"). (*Id.* at 13.)

In December 2009, the USPS posted an internal job listing for two Customer Service Supervisor positions in the Chapel Hill Post Office. (Declaration of Toni Gorman (hereinafter "Gorman Decl.") ¶ 4, Docket Entry 12-3; *see also* Job Postings, Docket Entries 12-4, 12-5.) Both positions were considered to be entry level positions. (Gorman Decl. ¶ 4.) The functional purpose of these positions, as listed in the Position Description, is to "[s]upervise[] a group of employees in the delivery, collection, and distribution of mail, and in window service activities within a post office . . . ." (STD Position Description, Docket Entry 12-8.) The internal job posting identified nine different qualifications and requirements for the job, including successful completion of a postal service test which measures knowledge, skills and abilities. (Internal Job Posting, Docket Entry 12-1.) Postmaster Gorman conducted the interviews for these positions and was the selecting official. (Gorman Decl. ¶ 5.) Her supervisor, Linda Strong, Postal Office Operations Manager ("POOM") was the reviewing official. (*Id.*)

The selection process for these two positions was conducted pursuant to the guidelines set forth in the thirty-nine page "USPS Short Term Supervisor Selection Process Structured Interview

2

Guidelines." (Docket Entry 12-9.) Postmaster Gorman reviewed these guidelines before conducting interviews and specifically reviewed the rating benchmarks included in the packet. (Gorman Decl. ¶ 7.) These guidelines provide a structured procedure for conducting interviews and include a scripted interview opening statement and interview questions. Postmaster Gorman selected questions from the list and prepared a set of interview worksheets for each applicant. (*Id.*)

There were ten applicants for each position; nine interviews were conducted for the first vacancy (Vacancy 56127861) and ten applicants interviewed for the second position (Vacancy 56127871). In each interview, Postmaster Gorman read the opening statement, asked the selected questions as written in the guidelines, prompted with follow-up as necessary to get additional details, and made written notes. (Gorman Decl. ¶ 8.) She also allowed each applicant to ask questions. (*Id.*) Immediately following each interview, Postmaster Gorman rated the applicants against the benchmarks provided, reviewed her notes, and assigned performance ratings to each applicant. The applicants received a rating for each of the eight performance standards listed in the position description. The applicant received either a 1 or 2 rating for each category, with a possible overall score of 8 to 16. (Gorman Decl. ¶ 9.)

For the first vacancy, six males and three females were interviewed. Postmaster Gorman gave Janet Evers a rating of 12, the highest of all the candidates. Plaintiff and two other male candidates (Peterson and Scott) each received a rating of 10, the next highest rating assigned by Postmaster Gorman. The two other female candidates each received a rating of 8. Postmaster Gorman selected Janet Evers for this position.[1]

For the second vacancy, Postmaster Gorman interviewed ten applicants, five males and five females, using the same guidelines and ratings. Kristina Palumbo received an 11, the highest rating

---

[1] Plaintiff does not complain of discrimination with regard to the hiring of Evers for this first vacancy position. (Pl.'s Dep. 16.)

in this group. Plaintiff and one other male, Smallwood, each received a 10 rating, and the other candidates received 8's and 9's. Postmaster Gorman selected Palumbo for this position.

Both Plaintiff and Palumbo had prior supervisory experience. Palumbo had served as a Higher Level Acting Supervisor in West Dover, Vermont for two years. (Docket Entry 12-38.) Plaintiff had served as an acting supervisor in Chapel Hill for about eighteen months. (Pl.'s Decl. ¶ 11.) Palumbo had approximately ten and a half years of experience with the Postal Service, both in North Carolina and in Vermont. (Declaration of Kristin Palumbo, (hereinafter "Palumbo Decl.") Docket Entry 12-41.) According to Postmaster Gorman, she made her selection for each vacancy "based on the application from the applicant as well as his or her performance in the interview." (Gorman Decl. ¶ 16.) Postmaster Gorman further stated that "[t]he employees selected for the positions were the persons that I felt were best suited for the . . . positions in Chapel Hill" and "[g]ender was not a factor in the selection process." (*Id.*)

Plaintiff was informed by Postmaster Gorman approximately ten days after his interviews in February 2010 that he had not been selected for either position. (Pl.'s Dep. 31, Docket Entry 12-1.) Plaintiff testified in his deposition that Postmaster Gorman told him that he did a good job, that he had done everything she had asked of him but that she thought he would have a difficult time getting along with the unions and that it is difficult for an employee to come from the ranks to a supervisory position over people with whom he had worked. (*Id.*) Plaintiff stated that he was "disappointed" with the decision but that he accepted it. (*Id.*)

Plaintiff testified that he worked with Palumbo on her third day in her new supervisory position and that it was at that point that he "began to make observations that she really didn't know anything" and that she was not qualified for the supervisor position. (*Id.* at 44.) Plaintiff testified that he believed Postmaster Gorman drove out "all of the male supervisors and replaced them with females." (*Id.* at 35.) On May 5, 2010, Plaintiff contacted an EEO counselor to report that he

4

believed he was a victim of gender discrimination.  On July 8, 2010, Plaintiff filed a formal EEO complaint against Defendant.  Following an investigation, the EEOC issued a right to sue letter on July 21, 2011.  (Notice of Final Action, Docket Entry 12-46.)

Plaintiff contends that Defendant discriminated against him based on his gender by failing to promote him to the Customer Service Supervisor position and by hiring a "clearly" less-qualified female for the position.  (Compl. ¶ 17.)  Plaintiff further alleges in his Complaint that "there is a pattern and practice on the part of the responsible management in the Chapel Hill [post office] to promote and advance females due to their status as females and to illegally discriminate against male applicants . . . ."  (*Id.* ¶ 18.)  In his prayer for relief, Plaintiff seeks compensatory damages in the amount of $500,000, along with injunctive relief, costs and attorney's fees.  (*Id.* ¶ 30; p. 7.)

**III. DISCUSSION**

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Zahodnick v. Int'l Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir. 1997).  The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact.  *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718 (4th Cir. 1991) (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact finder to return a verdict for that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir. 1995).  Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence

5

is insufficient to establish his claim. *Celotex*, 477 U.S. at 331 (Brennan, dissenting). When making the summary judgment determination, the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir. 1997).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Id.* "The non-moving party cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (internal quotation omitted). Moreover, the non-movant's proof must meet the substantive evidentiary standard of proof that would apply at a trial on the merits. *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993), *modified on other grounds*, *Stokes v. Westinghouse Savannah River Co.*, 420, 429-30 (4th Cir. 2000); *DeLeon v. St. Joseph Hosp., Inc.*, 871 F.2d 1229, 1233 n.7 (4th Cir. 1989). Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its terms. As the *Reeves* court noted:

6

> Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

*Reeves*, 530 U.S. at 148. As reiterated by the Court of Appeals for the Fourth Circuit, under the *Reeves* standard: "'if no rational factfinder could conclude that the [employer's job] action was discriminatory,' then the case should not proceed beyond summary judgment . . . [b]ut in the absence of evidence requiring such a conclusion, a prima facie case and evidence of pretext raises a sufficient inference of discrimination to entitle a plaintiff to survive a motion for summary judgment." *EEOC v. Sears Roebuck and Co.,* 243 F.3d 846, 854 (4th Cir. 2001) (quoting *Reeves*, 530 U.S. at 148).

B. <u>Analysis</u>

Plaintiff alleges that Defendant promoted a less-qualified female and failed to promote him based on his gender in violation of Title VII. Defendant argues that Plaintiff has failed to establish his *prima facie* case of discrimination and, alternatively, that Defendant has presented sufficient evidence of legitimate non-discriminatory reasons for its employment decision and that therefore summary judgment is proper because there is no genuine issue of material fact.

    1. Gender discrimination claim under Title VII

Title VII makes it "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensations, terms, conditions, or privileges of employment, because of such individual's race, color, religions, sex, or national origin . . . ." 42 U.S.C § 2000e-2(a)(1). A plaintiff asserting a claim under Title VII may proceed under ordinary principles of proof using direct or indirect evidence, or in the absence of direct proof of a defendant's intent to discriminate, a plaintiff may

7

employ the burden-shifting framework outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973) to establish a *prima facie* case of discrimination.

      a. *Prima facie* case

To establish a *prima facie* case of discriminatory failure to promote under Title VII, a plaintiff must show (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected under circumstances giving rise to an inference of unlawful discrimination. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). The burden of establishing a *prima facie* case is not an onerous one. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Under the familiar burden-shifting framework of Title VII, once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to advance a legitimate, non-discriminatory reason for the challenged employment decision. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant makes this showing, the plaintiff must then present evidence to prove that the defendant's articulated reason was a pretext for unlawful discrimination. *Id.* at 507-508. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253.

Defendant here, for the purposes of the motion for summary judgment, assumes that Plaintiff has satisfied the first three prongs of his *prima facie* case. (Def.'s Mem. Supp. Mot. Summ. J. 15, Docket Entry 12.) Defendant contends that Plaintiff cannot establish the fourth prong (that he was rejected for the position for which he applied under circumstances giving rise to an inference of unlawful discrimination) because there is no evidence that Palumbo was not qualified or was less qualified than Plaintiff for the position. However, to satisfy the fourth prong, a plaintiff need only show that the position was filled by a person not in the protected class, in this case a female.

8

Because the position here was filled by a woman, Plaintiff has established a *prima facie* case of a discriminatory failure to promote. *See Carter v. Ball*, 33. F.3d 450, 458 (4th Cir. 1994).[2]

        b. Legitimate non-discriminatory reason

Under *McDonnell Douglas*, once a plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to put forward a legitimate non-discriminatory explanation for the decision. *Hux v. City of Newport News, Va.*, 451 F.3d 311, 314-15 (4th Cir. 2006). Defendant need not affirmatively establish a legitimate non-discriminatory justification; rather, defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257. Here, Defendant has provided legitimate, non-discriminatory reasons for its decision not to hire Plaintiff for the position which ultimately went to Palumbo: Palumbo had a better interview and her experience was better suited for the position. In other words, in the eyes of the decisionmaker, Postmaster Gorman, Palumbo was better qualified for the position. *See Hux*, 451 F.3d at 317 (recognizing the discretionary authority of hiring officials).

Defendant points to Palumbo's prior supervisory experience <u>and</u> her better ratings in the measured categories of the interview. "Job performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans*, 80 F.3d at 960. Put another way, "[e]xperience . . . constitutes a qualitatively different criterion upon which to base an employee's selection." *Brinkley v. Harbour Rec. Club*, 180 F.3d 598, 611 (4th

---

[2] Defendant argues that Plaintiff should not be allowed to base his *prima facie* case solely on the fact that the individual selected for the vacancy was female because such a premise "would not focus on the gender of the applicants interviewed and how they were scored by Postmaster Gorman." As more fully set forth below, Plaintiff has not met his ultimate burden in this case and so it is unnecessary to decide whether the mere fact that a female was hired proves the fourth element. Indeed, case law suggests that it does. *See Carter*, 33 F.3d at 548 (to establish "circumstances giving rise to an inference of unlawful discrimination," a plaintiff need only offer evidence that the position was ultimately filled by a person outside of his protected group); *Johnson v. City of Charlotte*, 229 F.Supp.2d 488, 493 (W.D.N.C. 2002) (holding that Plaintiff's showing that she was a black female who applied for and was qualified for a position which ultimately went to a white male was sufficient to make out a *prima facie* case of discriminatory failure to promote).

9

Cir. 1999), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). An employer clearly "has discretion to choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." *Burdine*, 450 U.S. at 259.

Additionally, there is evidence in the record regarding the structured interview process employed by Postmaster Gorman, which included a selected set of questions covering the eight targeted categories. All the interviewees were asked the same questions. Plaintiff testified that he felt rushed through his interview, but he acknowledged that he was able to give complete answers to Postmaster Gorman's questions. (Pl.'s Dep. 21-23.) Defendant has presented evidence and testimony from Postmaster Gorman showing her interview notes and scoring of all candidates against the structured benchmarks in the guidelines. (*See,* e.g., Docket Entries 12-12 through 12-21.) Plaintiff did not rate as high as Palumbo in the areas of functional administration and work unit planning, but he outscored Palumbo in the change management category. Plaintiff scored higher than other candidates who were not selected, both male and female, which suggests that Postmaster Gorman did not discriminate based on gender. (*Id.*) *See Obi v. Anne Arundel County*, 142 F. Supp. 2d 655, 670 (D. Md. 2001) (in a failure to promote case, the plaintiff's interview scores were the highest of all candidates but there was "no dramatic discrepancy between his performance and that of [selectee] and the second highest rated candidate [such] to indicate that the interview process served as a subterfuge for a discriminatory hiring process.")

Plaintiff asserts that after Palumbo started in her new supervisory position it became clear to him that she was not qualified. There is no other credible evidence to support this claim by Plaintiff. As such, conclusory self-serving allegations as to the qualifications of another candidate are simply not enough to create a jury question with regard to the alleged discrimination. "It is the perception of the decisionmaker which is relevant, not the self-assessment of the plaintiff." *Evans*, 80 F.3d at 960-61 (internal quotation omitted). A plaintiff "may not recast an employer's legitimate, non-

10

discriminatory reason or substitute his business judgment for that of the employer . . . ." *Monk v. Potter*, 723 F.Supp. 2d 860, 881 (E.D.Va. 2010) In summary, even accepting Plaintiff's assertions about his own qualifications, he has failed to demonstrate sufficient evidence from which a jury could conclude that the basis given by the Defendant for not promoting Plaintiff was not a legitimate, non-discriminatory basis for the decision.

        c. Pretext

If Plaintiff could produce evidence that the reason offered by Defendant for its employment decision was a pretext for discrimination, he could defeat Defendant's motion for summary judgment. He could do this by showing that Defendant's reason is "unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of" discrimination. *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 409 n. 12 (4th Cir. 2005); *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). In his memorandum opposing summary judgment, Plaintiff suggests two issues that might raise the specter of pretext: (1) that he was qualified and "significantly more experienced" than Palumbo, and (2) that Postmaster Gorman has offered inconsistent and changing reasons for not selecting him. (Pl.'s Mem. Opp. Mot. Summ. J. 3, Docket Entry 16.)

With regard to Plaintiff's qualifications, Defendant concedes that Plaintiff was qualified for the position in question. (Def.'s Mem. at 19, Docket Entry 12.) Plaintiff, however, has failed to show that he was more qualified than Palumbo, who was hired for the position. The law is settled that it is the employer's prerogative to establish the qualifications for a position, and that a plaintiff must, to establish pretext, show that he was the better qualified candidate with respect to those qualifications that the employer deemed important. *See EEOC v. Fed. Reserve Bank of Richmond,* 698 F.2d 633, 671 (4th Cir.1983), *rev'd in part on other grounds sub nom. Cooper v. Fed. Reserve Bank of Richmond,* 464 U.S. 932 (1983), (holding that an employer has the right to establish the qualifications that are "necessary or preferred" for a position and the plaintiff must show not only that he meets

11

these qualifications to establish a *prima facie* case but also that he is superior to the selected candidate to establish pretext); *Evans*, 80 F.3d at 960-61 (noting that a plaintiff's own self-interested assessment of his qualifications for a particular position is irrelevant and that it is the decision-maker's assessment that matters); *Hux*, 451 F.3d at 315 (holding that a plaintiff cannot show pretext "simply [by] compar[ing][him]self to other employees on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors in combination."). Other than his assertion that he was better qualified than Palumbo, Plaintiff has offered no evidence that the Defendant's stated reason for selecting Palumbo rather than Plaintiff (or any other candidate) was false. *See Holland v. Washington Homes, Inc.*, 487 F.3d at 215 (noting that judgment as a matter of law may be appropriate if a "'plaintiff created only a weak issue of fact as to whether the employer's reasons were untrue,'") (quoting *Reeves*, 530 U.S. at 148.)

Plaintiff further argues that he has shown pretext with evidence that Postmaster Gorman has offered inconsistent, and multiple, reasons for not hiring Plaintiff for the vacant position. According to Plaintiff, Postmaster Gorman first told him that he was not selected because he allegedly "would not get along with the union" and with subordinates, but Gorman claimed later during the EEO investigation that the reason the selectees were hired was because they had better interviews than Plaintiff. (Pl.'s Decl. ¶ 17.) Also in the EEO proceeding, Defendant offered evidence as to Plaintiff's conflicts with other employees while he was serving as an acting supervisor. In his deposition, Plaintiff admitted to these conflicts. (Pl.'s Dep. 7-10, 21-30.)

It is true that under certain circumstances, courts have found that shifting or false reasons may suggest pretext. *See Dennis*, 290 F.3d at 647 ("The fact that an employer has offered inconsistent post-hoc explanations for its employment decision is probative of pretext."); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996) ("An employer's changing rationale for making an adverse employment decisions can be evidence of pretext."). However, different or

12

varying explanations that are not materially inconsistent may not be suggestive of pretext. *See Baldwin v. England*, 137 Fed. App'x 561, 564-65 (4th Cir. 2005) (unpublished) ("the Navy's proffer of consistent, though varying, reasons that [plaintiff] could not be promoted fails to support an allegation that any of those reasons are false, much less that all of them are a pretext for discrimination.").

Plaintiff cites four cases in support of his primary argument that "pretext may be shown by inconsistent or changing explanations for the employer's adverse employment action." (Pl.'s Mem. 10.) These cases are all easily distinguished from the present case and offer little support to Plaintiff.

In *Sears Roebuck*, a Title VII employment discrimination case on the basis of national origin, Sears proffered several reasons over a period of time for its failure to hire the plaintiff who had worked for Sears as a part-time loss prevention agent in California and sought a similar position when he was transferred by the Marine Corps to North Carolina. *Sears*, 243 F.3d at 847-49. In an answer filed with the EEOC, Sears contended that the plaintiff had not contacted the North Carolina store and that the store employees had been unsuccessful in attempts to contact the plaintiff. Later, Sears maintained that they did not hire the plaintiff because there were no hours available in the loss prevention department. *Id.* at 849. During discovery, Sears offered still another reason - that an employee had repeatedly tried to contact the plaintiff at his work number but was told that he was on deployment. No explanation was offered as to why the employees did not try to reach the plaintiff at home, nor did the explanation address the plaintiff's repeated job applications and phone calls to the store during this time. A manager later testified the reasons given to the EEOC were not true and in fact she had been told by her supervisor to not go any further with the plaintiff's application. *Id.* at 850. The court concluded that under the totality of the circumstances, ample evidence allowed a factfinder to conclude that the latest asserted justification was a pretext.

13

"[W]hen a company, at different times, gives different and arguably inconsistent explanations, a jury may infer that the articulated reasons are pretextual." *Id.* at 853

In *Dennis*, a gender discrimination case which went to trial, the appellate court found that an employer's explanations were inconsistent when the employer testified in a deposition that a candidate was preferred because of his management experience but later testified at trial that it was both managerial experience and computer knowledge that set the candidate apart. 290 F.3d at 646-47. The court found sufficient evidence of pretext when these "inconsistent post-hoc explanations" for the promotion of the plaintiff's male comparator were considered in combination with the employer's deviation from formal job requirements in the promotion process, the employer's denial of fair consideration to the other female applicant when she was the only candidate possessing all of the written job qualifications, and the lack of superior skills of the male applicant who was selected for the promotion. *Id.* [3]

Unlike *Sears* and *Dennis*, which involved more complicated fact patterns and multiple suggestions of pretext, Plaintiff here has presented scant evidence from which a reasonable trier of fact could find pretext. Plaintiff has simply not shown that the reasons given by Defendant were not legitimate, non-discriminatory reasons for not promoting Plaintiff and for hiring Palumbo. From the time Postmaster Gorman made the hiring decision, Defendant has consistently maintained

---

[3] Two other two cases cited by Plaintiff, both from other circuits, are similarly unavailing. In *Cummins v. Standard Register Co.*, 265 F.3d 56 (1st Cir. 2001), the court affirmed a jury verdict for the plaintiff where a combination of age-related comments and changing reasons given for the termination decision "provided an independent basis for the jury to conclude that the company's stated rationales were pretextual and that the real motivation was age animus." *Id.* at 64. Additionally, the plaintiff presented deposition testimony of other employees who believed that they were victims of discrimination at the hands of the defendant employer, together with evidence of a "discriminatory atmosphere" in the workplace. *Id.* at 63. In the final case cited by the Plaintiff, *Abrahamson v. William Paterson College of New Jersey*, 260 F.33d 265 (3rd Cir. 2001), a former associate professor brought suit against a college, asserting religious discrimination, hostile work environment and retaliation claims under Title VII. The court held that the entire set of circumstances, including ongoing "discriminatory animus" coupled with "the ever-changing nature of the proffered reasons" given for the plaintiff's termination were sufficient to create a genuine issue of material fact. *Id.* at 284-86. The evidence presented by Plaintiff in the present case simply does not rise to the level of evidence of discrimination in these cases.

that Plaintiff did not score as well in the interview as Palumbo. The selection process was based on standard USPS guidelines, and Postmaster Gorman followed the standard protocol. The interview notes and scoring sheets indicate that Plaintiff scored high in both interviews, but that Palumbo and Evers both scored higher than him. (Gorman Decl. Exhibits, Docket Entry 12-12 through 12-21; 12-23 through 12-33.) Plaintiff asserts, however, that Postmaster Gorman initially told him that she did not select him because she believed he would have difficulty with the union or with getting along with others. (Pl.'s Decl. ¶ 17.) At the time, Plaintiff testified, he was disappointed but accepted Postmaster Gorman's decision. (Pl.'s Dep. 32-33.)

The reasons Postmaster Gorman allegedly provided to Plaintiff, in response to an informal inquiry from Plaintiff about the hiring decision, were not detailed; as noted above, Plaintiff alleges that Postmaster Gorman told him that he would have problems with the unions and with supervising his former peers. Plaintiff contends that he would not have had difficulty with the unions or supervising or getting along with other employees. For the purposes of summary judgment, it is well-settled this court must accept Plaintiff's statement as true. However, the relevant question here is not whether the substance of the statements is true but whether Defendant believed the reasons and whether they were valid reasons for the decision to promote Palumbo rather than Plaintiff. *See Holland*, 487 F.3d at 220 ("Whether [Plaintiff] actually [engaged in the prohibited conduct] is irrelevant in this context because it is uncontested that the decisionmaker believed that he did."); *DeJarnette v. Corning, Inc.*, 133 F.3d 292, 299 (4th Cir. 1998) ("[W]hen an employer articulates a reason for [an employment decision] not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the [decision].") There is no evidence in the record that these reasons were false or fabricated by Defendant to cover up an improper discriminatory purpose. What Plaintiff characterizes as Gorman's "changing stories" are simply not reflective of inconsistency but rather

15

serve to clarify what Postmaster Gorman expressed from the start, which was that Palumbo was a better fit for the job. These reasons are simply not of sufficient inconsistency to raise the inference of pretext. There is no evidentiary support suggesting that Defendant was manufacturing false reasons or post-hoc rationalizations to support the hiring decision. Plaintiff has not presented sufficient evidence from which a jury could find that he was more qualified for the position or that Defendant's asserted legitimate reasons for hiring Palumbo were false.

2. Disparate Impact

In his complaint, Plaintiff alleges a "pattern and practice on the part of the . . . Chapel Hill [post office] to promote and advance females due to their status as females and to illegally discriminate against male applicants . . . in promotions to supervisory positions." (Compl. ¶ 18.) To the extent Plaintiff's theory rests upon a disparate impact claim, he has failed to put forward sufficient evidence to support such a claim.

In order to establish a *prima facie* case of disparate impact discrimination, a plaintiff must demonstrate "that [an alleged] facially neutral employment practice had a significantly discriminatory impact." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 265 (4th Cir. 2005) (internal quotation omitted). A plaintiff may use statistical evidence to support his argument that an unlawful practice caused a discriminatory effect. *Id.*

Plaintiff argues briefly in his memorandum that "the selection by Gorman of two female applicants for [the EAS-17 Supervisor] position resulted in [a] workforce where every EAS-17 position (six positions) was occupied by a female under the supervision of a female Postmaster." (Pl.'s Mem. 2.) Plaintiff offers no concrete evidence to support this allegation. In his deposition, Plaintiff testified that "all the male supervisors were driven out" of the Chapel Hill post office but again simply offered his own opinions as to this claim, with no supporting evidence of claims or statements by other male employees who he alleges were forced out. (Pl.'s Dep. 35-36; 40-42.)

16

Plaintiff's claims lack factual support in the record to establish a prima facie case of gender discrimination under a disparate impact theory.[4]

## IV. CONCLUSION

Summary judgment is a drastic remedy. It remains Plaintiff's burden, nevertheless, to show that discrimination was the motivating factor in denying him a promotion. It is not necessary for this court to decide whether "'the reason [for the decision] was wise, fair, or even correct, so long as it truly was the reason for [Defendant's decision].'" *Hawkins v. PepsiCo*, 203 F.3d 274, 279 (4th Cir. 2000) (quoting *DeJarnette*, 133 F.3d at 299). "Proof that the employer's proffered reasons are unpersuasive, or even obviously contrived . . . does not necessarily establish that [plaintiff's] proffered reason is correct." *Reeves*, 530 U.S. 133 at 156-57. "It is not enough to disbelieve the [employer]. . . ." *Love-Lane v. Martin*, 355 F.3d 766, 788 (4th Cir. 2004). Plaintiff must demonstrate that a reasonable jury could believe his "explanation of intentional . . . discrimination." *Id.* Furthermore, even if Plaintiff has met his burden of presenting a *prima facie* case, Defendant has met its burden to produce a legitimate, non-discriminatory reason for the failure to promote, and Plaintiff has not provided sufficient evidence, beyond conclusory allegations and unsupported assertions, to support a finding of pretext. Viewing the record as a whole in the light most favorable to him, Plaintiff has failed to demonstrate a genuine issue of material fact that Defendant's nondiscriminatory reasons for selecting Palumbo constituted pretext. Accordingly, the court finds that summary judgment is appropriate.

---

[4] The court notes as well that Plaintiff testified that Postmaster Gorman selected a male for a management position at one of the post office branches in Chapel Hill (Pl.'s Dep. 33), one of only two other supervisory positions filled by Postmaster Gorman. Such a hiring decision significantly undermines Plaintiff's disparate impact claim.

17

For the reasons stated herein, **IT IS RECOMMENDED** that Defendant's motion for summary judgment (Docket Entry 11) be **GRANTED**.

_/s/ Joe L. Webster_
Joe L. Webster
United States Magistrate Judge

Durham, North Carolina

February 15, 2013